UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE AMERICAN AUTOMOBILE
ASSOCIATION, INC.,

                Plaintiff,

v.

Case # 18-CV-6040-FPG

DECISION AND ORDER

AAA LOGISTICS, INC.,

                Defendant.

## INTRODUCTION

On January 12, 2018, Plaintiff American Automobile Association, Inc., (AAA) filed a complaint alleging that Defendant AAA Logistics, Inc., used AAA's well-known logo on Defendant's trucks without its consent. ECF No. 1 ¶ 1-21. AAA alleges six[1] claims: violations of (1) the Lanham Act, 15 U.S.C. § 1114; (2) 15 U.S.C. § 1125(a); (3) 15 U.S.C. § 1125(c); (5) New York General Business Law § 360(1); (6) New York General Business Law § 349; and (7) New York common law for trademark infringement and unfair competition. *Id.* ¶¶ 44-75. It seeks a permanent injunction, attorney's fees, and costs. *Id.* at 12-14.

When Defendant failed to answer or otherwise respond to AAA's complaint, AAA moved for and received a clerk's entry of default. ECF Nos. 4-5. Currently before the Court is its motion for default judgment, which it filed on March 21, 2018, and its motion for a hearing. ECF Nos. 6, 10. For the following reasons, AAA's motion for default judgment is GRANTED and its motion for a hearing is DENIED AS MOOT.

---

[1] AAA misnumbered its claims and thus did not include a fourth claim. So, even though the Complaint contains a seventh claim, it in fact has six claims. *See* ECF No. 1 at 7-11. To avoid confusion, the Court will refer to the claims as they are labeled in the Complaint.

## BACKGROUND

AAA is a not-for-profit, non-stock corporation that provides automobile-related products and services across the United States, including Monroe County, New York. ECF No. 1 ¶ 6. AAA has registered over 100 trademarks with the United States Patent and Trademark Office (PTO); relevant here are three, which protect the word mark "AAA" and AAA's well-known logo, reproduced below. *Id.* ¶ 18; ECF No. 6-5.



Defendant is a New York business operating out of Monroe County, New York. ECF No. 1 ¶ 7. AAA has never authorized Defendant to use its trademarks. *Id.* ¶ 20. Around June 2017, AAA learned that Defendant was using its business name and the logo reproduced below to "designate and advertise [its] transportation services." *Id.* ¶ 23.



AAA corresponded with Defendant, notified it of AAA's marks, and requested it to remove the AAA logo from its trucks and discontinue use of all AAA marks. *Id.* ¶¶ 24-37. Although Defendant initially agreed to stop using the marks, it never provided proof that it had done so and stopped responding to AAA's correspondence. *Id.*

**LEGAL STANDARD**

A plaintiff must follow a specific process to obtain a default judgment. Fed. R. Civ. P. 55; *Gasser v. Infanti Int'l, Inc.*, No. 03 CV 6413 (ILG), 2008 WL 2876531, at *6 n. 6 (E.D.N.Y. July 23, 2008); *Brown v. Marshall*, No. 08-CV-12F, 2009 WL 1064189, at *1 (W.D.N.Y. Apr. 20, 2009). First, when a defendant has "failed to plead or otherwise defend" an action against it, the plaintiff must secure an entry of default from the clerk via an affidavit or other showing. Fed. R. Civ. P. 55(a). Next, if the plaintiff is seeking a "sum certain" and the defendant is neither a minor nor incompetent, the plaintiff may request the clerk to enter a default judgment and the clerk must oblige. Fed. R. Civ. P. 55(b)(1). "In all other cases," the party seeking a default judgment must apply to the Court. Fed. R. Civ. P. 55(b)(2).

Since a defendant's default "admits well-pleaded allegations contained in the complaint," the Court reviews those allegations to determine whether they establish defendant's liability as a matter of law. *Taizhou Zhongneng Import & Export Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)) (summary order). Although the Second Circuit prefers to resolve disputes on their merits, deciding whether to grant a motion for default judgment is within the Court's discretion. *Palmieri v. Town of Babylon*, 277 F. App'x 72, 74 (2d Cir. 2008) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)) (summary order).

**DISCUSSION**

**I.    Default Judgment**

Since the Court finds that AAA's complaint establishes Defendant's liability as to the first and second claims for trademark infringement and false designation of origin under the Lanham Act, §§ 1114 and 1125(a), the Court need not consider AAA's remaining claims. *AAA v. Limage*,

No. 15-CV-7386 (NGG) (MDG), 2016 WL 4508337, at *2 (E.D.N.Y. Aug. 26, 2016) (citing *Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261, 269 (E.D.N.Y. 2011)). Additionally, the Court considers the two claims together since "they are both governed by the same" two-prong test. *Id.* (citing *Virgin Enters. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)).

"The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enters.*, 335 F.3d at 146 (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993)).

The Court finds that AAA has satisfied both prongs. First, a certificate of registration, of which AAA has provided three, is "*prima facie* evidence that the mark is registered and valid (i.e., protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)). AAA has registered over 100 trademarks with the PTO, and the three at issue have been registered since May 23, 1967, May 19, 1998, and September 16, 2016. Consequently, AAA's marks are entitled to protection. *See Limage*, 2016 WL 4508337, at *3.

Second, to determine whether Defendant's use of AAA's marks is likely to cause consumer confusion, the Court applies "the eight-factor balancing test introduced in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961)":

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 108 (2d Cir. 2009). Analysis of the *Polaroid* factors is "not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005). Accordingly, "[n]o single factor is dispositive . . . ." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130 (2d Cir. 2004) (citing *Polaroid*, 287 F.2d at 495).

The Court finds that the first three factors strongly favor AAA and the remaining five are neutral.

### A. The First Three Factors

First, AAA's marks are strong since they "score[] high on both concepts of strength": inherent distinctiveness and acquired distinctiveness. *Virgin Enters.*, 335 F.3d at 148. AAA's marks are "inherently distinctive" because they are arbitrary, "make[] no reference to the nature of the goods [they] designate[ ,]" and properly identify AAA's goods and services. *Id.* at 147-48. Consequently, AAA can "establish goodwill for their goods based on past satisfactory performance," and consumers "can rely on [the] mark as a guarantee that the goods or services so marked come from the merchant who has been found to be satisfactory in the past." *Id.* at 147.

Additionally, AAA's marks have "acquired distinctiveness" because they have "been long, prominently and notoriously used in commerce." *Id.* at 148. At least one of AAA's marks has been registered for over 50 years. ECF No. 6-5. Such a long-standing mark leads to "widespread consumer recognition," which "increases the likelihood that consumers will assume it identifies the previously familiar user, and therefore increases the likelihood of consumer confusion if the new user is in fact not related to the first." *Id.*

Second, AAA's mark and Defendant's mark are nearly identical. While the coloring of AAA's mark differs from Defendant's, both contain three capital As surrounded by an oval resting on a diagonal, unfinished ring. The font of the As, the thickness of the lines in the oval and the ring, and the spacing and orientation of the As, the oval, and the ring are identical in both marks. It appears that Defendant's mark is a mirror image of AAA's mark: Defendant's mark has the ring on the left with the As in the oval directly to its right, and AAA's mark has the opposite orientation. Regardless, the difference in color and order cannot obscure the nearly-identical nature of the marks.

Third, there is a high degree of competitive proximity between the marks since both AAA and Defendant operate in Monroe County, New York, and both provide services related to automobiles and transportation. *Brennan's, Inc.*, 360 F.3d at 134 (explaining that marks are competitively proximate if they "are in related areas of commerce" and geographically proximate).

### B. The Remaining, Neutral Factors

The fourth factor, "bridging the gap," is irrelevant. There is no gap to bridge since AAA's and Defendant's services are already in competitive proximity. *Star Indus., Inc.*, 412 F.3d at 387.

The fifth factor is neutral. "[A]ctual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove, and the Act requires only a likelihood of confusion as to source." *Guthrie Healthcare Sys.*, 826 F.3d at 45 (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)). AAA has not provided evidence of actual consumer confusion here, so the factor is neutral. *See id.*

The sixth factor is neutral. AAA has not provided evidence of Defendant's bad faith beyond highlighting the similarity of the marks and Defendant's failure to respond to AAA's correspondence. While the marks are nearly identical, the lack of evidence submitted by AAA

and the strength of the first three factors supports the Court finding this factor neutral. *See Virgin Enters.*, 335 F.3d at 151 ("A finding that a party acted in bad faith can affect the court's choice of remedy or can tip the balance where questions are close.").

Finally, the seventh and eighth factors are neutral. AAA has not submitted evidence as to either factor—the quality of products and sophistication of consumers in the market—so ruling either for AAA or Defendant would be speculative. *See id.* at 151-52.

In sum, the first three *Polaroid* factors strongly favor AAA and the remaining five are neutral. The Court therefore concludes that AAA's allegations support a finding of Defendant's liability on AAA's first and second claims. The Court next considers whether AAA is entitled to a permanent injunction and attorney's fees and costs.

## II. Permanent Injunction

"A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 157 (E.D.N.Y. 2013) (quoting *Kinevision Pay-Per-View Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006)). The first prong is satisfied since the Lanham Act allows courts to issue injunctions. 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions . . . to prevent the violation of any right of the registrant of a mark registered in the [PTO] . . . ."). So, the Court next considers the factors a plaintiff must establish to secure an injunction: (1) irreparable injury; (2) inadequate remedies at law; (3) balance of hardships; and (4) the public interest. *Limage*, 2016 WL 4508337, at *6 (quoting *eBay Inc. v. MercExchange, L.L.C.*,

547 U.S. 388, 391 (2006)). AAA has the burden of establishing each factor. *Stark Carpet Corp.*, 954 F. Supp. 2d at 157.

The Court finds that AAA has established each factor. First, AAA has established irreparable injury. AAA has shown that Defendant's use of AAA's marks harms AAA's reputation and could cause consumer confusion, and that Defendant has refused to cease its use of AAA's marks after AAA communicated with it. ECF No. 6-1 at 10-12; *see also Rovio Entm't Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015). Absent a permanent injunction, Defendant will likely continue to market its services using AAA's marks. *See McGraw-Hill Global Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 499-500 (S.D.N.Y. 2018). Moreover, given the nature of AAA's injuries, the loss is difficult to replace and measure. *See Limage*, 2016 WL 4508337, at *6 (citing *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010)).

For similar reasons, Plaintiff has shown that remedies at law are inadequate. Defendant has shown that is has no interest in cooperating with AAA and ceasing its use of AAA's marks. Compensation is thus ineffective. *Stark Carpet Corp.*, 954 F. Supp. 2d at157 ("In the absence of assurances in the record against a defendant's continued infringing activity, a remedy at law may be deemed insufficient to compensate a plaintiff for its injuries.").

The third factor favors a plaintiff where it "has established irreparable harm," "the infringing conduct is likely to continue absent injunctive relief," and "plaintiff has already incurred substantial legal costs in protecting its trademark rights." *Limage*, 2016 WL 4508337, at *6 (quoting *Hilton v. Int'l Perfume Palace, Inc.*, No. 12-CV-5074 (JFB) (GRB), 2013 WL 5676582, at *13 (E.D.N.Y. Oct. 17, 2013)). AAA has shown all three here, so the third factor is satisfied.

Finally, "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *Rovio Entm't*

*Ltd.*, 97 F. Supp. 3d at 547 (quoting *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010)). The final factor therefore also favors AAA.

Consequently, the Court finds that AAA is entitled to a permanent injunction. The Court will set forth the terms of the injunction in its conclusion below.

### III. Attorney's Fees and Costs

The Lanham Act allows an award of attorney's fees but only in "exceptional cases" where a defendant demonstrates "willful infringement." *Federal Express Corp. v. JetEx Air Express Inc.*, No. 16-CV-01553 (CBA)(RER), 2017 WL 816479, at *9 (E.D.N.Y. Jan. 26, 2017) (citing *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003)); *see also* 15 U.S.C. § 1117(a). The Court has the discretion to make such an award. *Id.*

Here, the Court finds that Defendant's infringement of AAA's marks was willful given the nearly-identical nature of the marks and Defendant's refusal to stop using the marks. Additionally, Defendant's default "gives rise to an inference of willfulness." *Diesel S.P.A. v. Does*, No. 14-CV-4592 (KMW), 2016 WL 96171, at *11 (S.D.N.Y. Jan. 8, 2016) (citing *Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009)).

To determine a reasonable attorney's fee, the Court "must first establish a reasonable hourly rate, which is 'the rate a paying client would be willing to pay.'" *Gen. Nutrition Inv. Co. v. Gen. Vitamin Ctrs., Inc.*, 817 F. Supp. 2d 66, 75 (E.D.N.Y. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 112 (2d Cir. 2007)). "Reasonable hourly rates are determined by reference to fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter." *Id.* (citing *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997)); *see also Luciano*, 109 F.3d at 115 ("It is well-established that the 'prevailing community' the district court should consider . . . is 'the district in

which the court sits.'"). The burden is on the movant to establish the hours for which it seeks reasonable compensation, and the district court's choice of rates is within its discretion. *Gen. Nutrition Inv. Co.*, 817 F. Supp. 2d at 75.

Here, AAA requests $5,308.80 in attorney's fees: $2,513.60 incurred by Neil K. Roman, Esq., Rebecca B. Dalton, Esq., and Robert N. Hunziker, Esq., at Covington & Burling, LLP, in New York City and $2,795.20 incurred by Robert J. Fluskey, Jr., Esq., Peter H. Wiltenburg, Esq., and paralegal Raymond R. Peplowski at Hodgson Russ LLP in the Western District of New York (WDNY). *See* ECF Nos. 6-2, 6-3, 6-15, 6-16.

Mr. Roman's hourly rate was $1,000 based on his location and 30 years of experience. ECF No. 6-2. Ms. Dalton and Mr. Hunziker both billed at $630 per hour. *Id.* Ms. Dalton has three years of experience; Mr. Hunziker's experience is not provided. *Id.* The Covington attorneys billed 4.4 hours on the case: 1 by Mr. Roman, 3.3 by Ms. Dalton, and 0.1 by Mr. Hunziker. ECF No. 6-3 at 4. Covington's bill was reduced by 20% from $3,142 to $2,513.60 pursuant to an agreement between Covington and AAA. ECF Nos. 6-2 ¶ 6, 6-3 at 2.

For Hodgson, Mr. Fluskey's rate was $375 based on his thirteen years of experience, Mr. Wiltenburg's was $270 based on five years of experience, and Mr. Peplowski's was $175 based on five years of experience as a paralegal. ECF No. 6-15. All told, they billed 11.1 hours: 6.1 by Mr. Fluskey, 2.2 by Mr. Wiltenburg, and 2.8 by Mr. Peplowski. ECF No. 6-16. Hodgson also reduced its bill by 20%, but it did so by reducing the rates of all three individuals by 20%. *Id.*

Since AAA has not made the "particularized showing" required to garner an attorney's fee award using out-of-district rates, *see Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009), the Court will reduce Covington's original, pre-reduction total—$3,142—by 50% to $1,571. Mr. Roman's rate is thus reduced to $500 per hour, and Ms. Dalton and Mr.

Hunziker's is reduced to $315. Those hourly rates resemble rates for similar work in WDNY. *See Granite Music Corp. v. Center Street Smoke House, Inc.*, 786 F. Supp. 2d 716, 738-39 (W.D.N.Y. 2011) (finding that hourly rates of $285-$300 for partners, $185-$195 for associates and $120 for paralegals were "in line with recent attorney's fees awarded by courts in this district" in intellectual property action). AAA is thus entitled to $4,366.20 in attorney's fees.

Finally, the Court awards $530.10 in costs to AAA. The total encompasses the filing fee, service costs, and a small copying fee. ECF No. 6-16 at 5. All of those costs are compensable. *See Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Serv., LLC*, 553 F. Supp. 2d 201, 210 (E.D.N.Y. 2008). Consequently, AAA is entitled to $4,896.30 in attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, AAA's motion for default judgment, ECF No. 6, is GRANTED and its motion for a hearing, ECF No. 10, is DENIED AS MOOT. The Clerk of Court is directed to enter judgment for AAA for $4,896.30 in attorney's fees and costs.

Additionally, it is hereby

ORDERED, that Defendant, its agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, must cease engaging in any of the following acts:

    a) Using without the authorization of AAA any of AAA's marks, logos, and trade names, including, but not limited to, the designation "AAA" or any other name, logo, or mark that includes the designation "AAA" or that is confusingly or deceptively similar to any of AAA's marks, logos, and trade names, either alone or in conjunction with other words or symbols, as a part of any trademark, service mark, logo, trade name, corporate

name, assumed name, domain name, on or in relation to any goods or services sold or distributed by the Defendant, or in any other manner; and

  b) Using any combination of multiple letter "A's" in any form or manner that would tend to identify or associate Defendant or its business or services with AAA, including, without limitation, in the marketing, promotion, advertising, identification, sale or distribution of goods or services, or in any other manner; and it is further

ORDERED, pursuant to 15 U.S.C. § 1118, that Defendant destroy all literature, signs, labels, prints, packages, wrappers, containers, advertising materials, Internet content, stationery, software, and any other items in its possession or control which contain the infringing designations "AAA," or any term confusingly similar to "AAA," either alone or in combination with other words or symbols, and to destroy all plates, molds, matrices, masters, and other means of making any of those infringing items; and it is further

ORDERED, that Defendant cancel or amend any assumed business names, any business name, trade name, or corporate registrations or applications, and any other public filings that contain the AAA Marks, or any other confusingly similar name, logo, or mark, including, but not limited to, those filings for AAA Logistics, Inc.; and it is further

ORDERED, that Plaintiff serve a copy of this Decision and Order on Defendant and file a certificate of service with the Court by April 5, 2019; and it is further

ORDERED, that Defendant file an affidavit with the Court by May 3, 2019, setting forth in detail the manner and form in which Defendant has complied with the injunction.

IT IS SO ORDERED.

Dated: March 25, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court